# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 7, 2015

Plaintiff-Appellee,

v

No. 320009
Wayne Circuit Court
LC No. 13-004506-FC

CHRISTOPHER WILLIAM DUBOIS,

Defendant-Appellant.

Before: BECKERING, P.J., and CAVANAGH and SAAD, JJ.

PER CURIAM.

Defendant appeals his bench trial convictions of: (1) assault with intent to do great bodily harm less than murder, MCL 750.84(1)(a); (2) felon in possession of a firearm, MCL 750.224f; and (3) possession of a firearm during the commission of a felony, MCL 750.227b.[1]  For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

The prosecution alleged that defendant participated in the shooting of his neighbor in April 2013.  At trial, the victim testified that, as he pulled into his garage, he saw two men standing in front of the gate that surrounds his home.  He recognized one of the men as defendant, who the victim had seen before at a nearby house.  Defendant held his hands out in front of him, and looked to be pointing a gun at the victim.  The victim drove away from his home, and heard six or seven gunshots fired behind him.  One bullet shattered the back window of his truck, and another hit him in the back.

At defendant's bench trial, the court heard testimony from the victim, police officers involved in the case, defendant's associates, and defendant himself.  The court also heard three telephone calls defendant made while incarcerated at the Wayne County Jail, in which defendant discussed his case with various individuals.  In December 2013, the court found defendant guilty

---

[1] The prosecution also charged defendant with assault with intent to commit murder, MCL 750.83, and assault with a dangerous weapon (felonious assault), MCL 750.82, but the court acquitted him of these charges.

of: (1) assault with intent to do great bodily harm less than murder, MCL 750.84(1)(a); (2) felon in possession of a firearm, MCL 750.224f; and (3) possession of a firearm during the commission of a felony, MCL 750.227b.

On appeal, defendant argues that defense counsel gave him ineffective assistance, because counsel did not impeach the victim's testimony with a recorded conversation, in which the victim purportedly stated that he was unsure defendant committed the shooting.[2] Defendant also demands a new trial, based on a prison photograph of his brother wearing braids, which supposedly supports his defense that the victim mistakenly identified him as the shooter.

## II. STANDARD OF REVIEW

A claim for ineffective assistance of counsel must be raised in the trial court by a motion for a new trial or an evidentiary hearing. *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002). Because our Court denied defendant's motion for an evidentiary hearing pursuant to *People v Ginther*,[3] our review of defendant's claim for ineffective assistance of counsel is limited to mistakes apparent on the record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). The trial court's findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id*.

"[A] motion for a new trial on the basis of newly discovered evidence must first be brought in the trial court in accordance with the Michigan Court Rules." *People v Darden*, 230 Mich App 597, 605-606; 585 NW2d 27 (1998). Because defendant did not file a motion for a new trial in the trial court, he did not preserve his claim for a new trial based on newly discovered evidence for appellate review. *People v Cox*, 268 Mich App 440, 448; 709 NW2d 152 (2005). Unpreserved issues are reviewed for plain error that affects a defendant's substantial rights. *Id*., citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## III. ANALYSIS

## A. ASSISTANCE OF COUNSEL

To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) there is a reasonable probability, but for counsel's error, the result of the proceedings would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

---

[2] After his initial claim of appeal, defendant filed a motion to remand in November 2014, which another panel of our Court denied. See *People v Dubois*, unpublished order of the Court of Appeals, entered December 29, 2014 (Docket No. 320009).

[3] 390 Mich 436; 212 NW2d 922 (1973). See n 2 supra.

"Defense counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable and professional judgment." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (internal quotation marks omitted). Defendant bears the burden of overcoming this presumption. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). Decisions concerning what evidence to present and how to question witnesses are ordinarily presumed to be matters of trial strategy,[4] and "[w]e will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

Here, defendant unconvincingly argues that his trial counsel rendered ineffective assistance when counsel did not impeach the victim with a recorded conversation, in which the victim supposedly says he is unsure whether the shooter was defendant or his brother. Again, our review is limited to mistakes apparent on the record. *Rodriguez*, 251 Mich App at 38. The only record evidence defendant cites in support of this claim is the following exchange between the victim and defense counsel:

> *[Defense counsel]*: Okay. Now, sometime after some, some periods, some months after the shooting and the fight where somebody got into your vehicle did you have a conversation with someone on the phone about this, about this incident and about who did it?
>
> *[Victim]:* Yes.
>
> *[Defense counsel]:* Okay. And do you recall in that conversation telling that individual that it was either the defendant Christopher or his brother, it was a light skinned guy?
>
> *[Victim]:* No, I don't. I don't remember saying that.

While this line of questioning demonstrates that defendant's trial counsel was aware of the recorded conversation, it does not show that he lacked a legitimate reason for his decision not to seek admission of the recording. In fact, defense counsel's mention of the recorded conversation indicates that he considered discussing the conversation with the victim, but concluded that the potential risks of introducing the recording outweighed the benefits of doing so. See *Vaughn*, 491 Mich at 670. Defendant's mere assertion that trial counsel should have further discussed the recording does not show that his trial counsel did not have a sound trial strategy, or that his performance was objectively unreasonable. *Lockett*, 295 Mich App at 187. Accordingly, defendant's claim for ineffective assistance of counsel is without merit.[5]

---

[4] *People v Payne*, 285 Mich App 181, 189-190; 774 NW2d 714 (2009).

[5] We note that the content of the conversation (which is not contained in the record) does not support defendant's claim that his trial lawyer gave him ineffective assistance. The very existence of the recording suggests that a person associated with defendant contacted the victim

## B. "NEW" EVIDENCE

"Historically, Michigan courts have been reluctant to grant new trials on the basis of newly discovered evidence." *People v Grissom*, 492 Mich 296, 312; 821 NW2d 50 (2012). Such motions are disfavored because the parties are expected to prepare for trial "with the full understanding that, absent unusual circumstances, the trial will be the one and only opportunity to present their case." *People v Rao*, 491 Mich 271, 280; 815 NW2d 105 (2012).

> For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (quotations and citation omitted).]

Evidence is not newly discovered if the defendant or the defendant's counsel was aware of the evidence at the time of trial. *Rao*, 491 Mich at 281. Logically, "[o]ne does not 'discover' evidence after trial that one was *aware of* before trial." *People v Terrell*, 289 Mich App 553, 563; 797 NW2d 684 (2010) (emphasis original). A defendant's knowledge of the evidence at the time of trial precludes a finding that the evidence is "newly discovered," even if the defendant characterizes it as such. *Rao*, 491 Mich at 282.

In this case, defendant says he is entitled to a new trial based on a prison photograph of his brother with his hair in braids, taken five months after defendant's trial. Defendant argues that the picture supports his assertion that the victim misidentified him as the shooter, because the victim might have actually seen defendant's brother.

At the outset, we note that the prison photograph submitted by defendant is not part of the trial court file, and therefore cannot be considered for purposes of determining whether defendant is entitled to a new trial.[6] In any event, the photograph is not "newly discovered"

---

and recorded their conversation with the specific intent of recording statements that would undermine the victim's identification of defendant at trial. Defense counsel may have wished to avoid reinforcing the notion that defendant, or someone associated with him, attempted to interfere with the victim's testimony, especially in light of other proofs suggesting defendant made an effort to tamper with evidence, including: (1) a jail telephone recording in which defendant urged an individual to "not say too much" to police; (2) a jail telephone recording in which an unknown speaker tells defendant he would "make sure" defendant would not have to "take a cop" and spend time in jail; (3) the testimony of the probation officer of defendant's brother, who stated that defendant's brother began copying defendant's braided hairstyle after the prosecution contacted her; and (4) the prosecutor's suggestion during questioning that one of defendant's associates recanted his initial statement placing defendant outside at the time of the shooting under pressure or threats by defendant's friends.

[6] See *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999) (the parties may not expand the record on appeal).

evidence. Defendant argued at trial that the victim saw his brother aim a gun at him, and mistook defendant's brother for defendant. Defense counsel underscored the physical similarities between defendant and his brother in closing argument, and introduced a photograph[7] of defendant's brother into evidence. He also used evidence that suggested defendant's brother was outside during the shooting, and implied that the victim may not have had a clear view of the shooter. In sum, because of the efforts of defense counsel, the trial court was aware of the possibility that the victim confused defendant with his brother, which would have made the "newly discovered" photograph of defendant's brother a cumulative variation on the same theme that animated his entire argument at trial. *Cress*, 468 Mich at 692.

By his own admission, defendant also could have produced a photograph of his brother wearing braids during his trial—as defendant notes in his brief on appeal, his brother "even while under [the supervision of the Michigan Department of Corrections], easily could, and did style his hair either in a ponytail or braids." Accordingly, a photograph of his brother wearing braids was, and always has been, potentially available evidence. See *Rao*, 491 Mich at 285 n 2. Defendant's failure to produce a photograph during his trial belies his sudden interest in doing so on appeal, and reveals his actions as a rather weak attempt "at judicial sandbagging." *Terrell*, 289 Mich App at 569.

And most importantly, the photograph would not result in the reversal of defendant's convictions at a retrial. *Cress*, 468 Mich at 692. Were we nonetheless to grant the assumption that the photograph demonstrates a likeness between defendant and his brother, it would not invalidate the numerous other reasons the trial court found the victim's identification of defendant to be reliable. Defendant is therefore not entitled to a new trial based on the photograph of his brother wearing braids.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Henry William Saad

---

[7] This photograph is not the prison photograph defendant wants admitted as "new evidence."